IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
JAN 15 2010
Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| CASUALTY & SURETY, INC.,<br>an Alabama corporation<br>100 Corporate Parkway, Suite 350<br>Birmingham, Alabama 35242<br>Telephone: (205) 995-0713,<br><br>    Plaintiff,<br><br>versus<br><br>PERSONAL CARE & ASSISTED LIVING<br>INSURANCE CENTER, L.L.C.,<br>also known as: "PCALIC, L.L.C.",<br>a limited liability company organized under<br>the laws of the Commonwealth of<br>Pennsylvania<br>195 Stock Street<br>Suite 118<br>Hanover, Pennsylvania 17331<br>Telephone: (717) 630-1188,<br>*Serve*: Brian A. Barrack, *qua* President &<br>Director Thereof<br>1872 Yingling Drive<br>Spring Grove, Pennsylvania 17362,<br><br>and<br><br>B.A. BARRICK & CO., INC., also known as<br>BARRICK, B.A. & CO., INC.,<br>a Pennsylvania corporation<br>619 York Street<br>Hanover, Pennsylvania 17331<br>Telephone: (717) 630-1030,<br>*Serve*: Brian A. Barrack, *qua* President &<br>Director Thereof<br>1872 Yingling Drive<br>Spring Grove, Pennsylvania 17362,<br><br>and | Civil Action No.:_____<br>*COMPLAINT FOR DAMAGES*<br><br><br><br>Case: 1:10-cv-00079<br>Assigned To : Kollar-Kotelly, Colleen<br>Assign. Date : 1/15/2010<br>Description: Contract |

1

|  |  |
|---|---|
| **BRIAN A. BARRACK**<br>1872 Yingling Drive<br>Spring Grove, Pennsylvania 17362,<br>Telephone: (717) 739-7270,<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DAMAGES

COMES NOW, before this Honorable Court, your plaintiff in above-encaptioned matter, *viz.*, Casualty & Surety, Inc., an Alabama corporation (hereinafter referenced *qua*: "CSI"), by and through its undersigned attorney and counsellor at bar, *viz.*, Joseph Peter Drennan, and herewith sues your within-named defendants, *viz.*, Personal Care & Assisted Living Insurance, L.L.C., also known as PCALIC, L.L.C., a Pennsylvania limited liability company (hereinafter referenced *qua* "PCALIC"), B.A. Barrick & Co., Inc., also known as Barrick, B.A., Inc., a Pennsylvania corporation (hereinafter referenced qua "B.A. BARRICK"), and Brian A. Barrick (hereinafter referenced *qua*: "Barrick"), and Risk Services, LLC ("Risk Services"), by showing unto this Honorable Court as follows, *viz.*:

## PARTIES

1. That CSI is a, *de jure,* Alabama corporation, with its principal office situate Shelby County, Alabama, at 100 Corporate Parkway, Suite 350, Birmingham, Alabama 35242, and is engaged in the business of insurance, as an independent national wholesale brokerage firm;

2. That, upon information and belief, PCALIC is a, *de jure,* limited liability company, organized under the laws of the Commonwealth of Pennsylvania corporation, with its principal place of business in the Keystone State as well, with said concern's headquarters located at 195 Stock Street, Suite 118, Hanover, Pennsylvania 17331; upon further information and belief, PCALIC is engaged in the insurance business;

3. That, upon information and belief, B.A. BARRICK is a *de jure* corporation, organized under the laws of the Commonwealth of Pennsylvania, on or about 15 December 1997, and maintains its principal place of business in the Commonwealth of Pennsylvania, at 619 York Street, Hanover, Pennsylvania 17331; upon further information and belief, at all time relevant herein, B.A. BARRICK, *inter alia*, shared office space with PCALIC, at 195 Stock Street, Hanover, Pennsylvania 17331, and is believed to have been, and is presently, an alter ego of, *inter alios*, PCALIC;

4. That, upon information and belief, your defendant known as Brian A. Barrick ("Barrick") is a natural, competent, adult, individual and citizen of the United States of America, domiciled in the Commonwealth of Pennsylvania, whom is believed to reside at 1872 Yingling Drive, Spring Grove, Pennsylvania 17362; upon further information and belief, at all times relevant herein, Barrick has been the President, as well as a Director of, PCALIC and BARRICK;

### *JURISDICTION AND VENUE*

5. That this Honorable Court has jurisdiction over the instant matter under the provisions of 28 U.S.C., § 1332 (a) (2) inasmuch as there exists complete diversity of citizenship among the parties hereto, and because the amount in controversy, exclusive of interest and costs to follow, exceeds the sum of seventy-five thousand dollars ($75,000.00); this Honorable Court may properly exercise jurisdiction over your defendants herein under, *inter alia*, the provisions of Title 13, § 423 (a) of the District of Columbia Code of General and Permanent Laws (2003);

6. That venue is properly lain in this Honorable Court as per the provisions of 28 U.S.C., § 1391 (a) (2);

## *FACTUAL AVERMENTS*

7. That, as adverted to *supra*, CSI is a wholesale insurance brokerage firm; CSI also acts as an insurance program manager;

8. That, in or around 2004, CSI learned Barrick was interested in selling insurance to assisted living facilities, but was unable to find a willing insurance carrier, a reinsurer, or any other necessary party;

9. That, after initial contact with Barrick, CSI agreed to organize the necessary businesses and develop plans for such an enterprise; accordingly, CSI developed a business plan, located a captive manager, and found a reinsurer;

10. That, on or about 31 March 2004, CSI and PCH Mutual Insurance Company, Inc. ("PCH"), entered into an Administrative Services Agreement, whereby, *inter alia*, PCH was the captive insurance company in the above-described business enterprise (referenced hereinafter *qua* "Administrative Services Agreement"); a true and accurate copy of the Administrative Services Agreement is attached hereto, and incorporated herewith by reference thereto, as if set out in full, *qua* "PLAINTIFF'S EXHIBIT 'A'";

11. That The Administrative Services Agreement requires CSI to, *inter alia*, develop, prepare, and underwrite insurance policies; CSI was obligated to retain premiums collected from the marketing manager and then remit insurance premiums to PCH; in return, CSI was entitled to ten percent of the gross earned premium payments; the Administrative Services Agreement was a ten year contract; it became effective on 31 March 2004, and does not expire 31 March 2014;

12. That, on or about 21 April 2004, PCH terminated CSI's underwriting responsibilities under the Administrative Services Agreement;

13. That, on or about 30 April 2004, PCH was formally organized and incorporated in the District of Columbia;

14. That, on or about July 20, 2004, CSI and PCALIC entered into a Producer Agreement (hereinafter referenced *qua* "Producer Agreement"), and a true and accurate copy of the Producer Agreement is attached hereto *qua* "PLAINTIFF'S EXHIBIT 'B'";

15. That the Producer Agreement requires that all premiums, less allowable commissions, which are received by PCALIC for business bound in accordance with the Producer Agreement, "shall be held by [PCALIC] in trust for the joint benefit of [CSI] and the insurer(s) underwriting the subject policy or policies until delivered to [CSI]"; the Producer Agreement further states that "[s]uch fiduciary funds remain the property of [CSI] and applicable insurer(s) at all times, unless and until [CSI] shall in writing authorize [PCALIC] to otherwise dispose of such premium . . . ."

16. That Paragraph 8 of the Producer Agreement states as follows, *viz.*:

    This Agreement and all rights, remedies and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Alabama. [PCALIC] hereby consents to the jurisdiction of Alabama courts with respect to any legal action arising out of this Agreement by [CSI].

17. That, on or about January 22, 2008, PCH, *inter alia*, terminated the Administrative Services Agreement;

### *COUNT I—BREACH OF CONTRACT (against PCALIC)*

18. That your plaintiff hereby incorporates by reference and realleges each and every one of the averments contained in the above paragraphs as if fully set forth herein;

19. That the Producer Agreement is a valid contract binding CSI and PCALIC.

20. That CSI has fulfilled all of its obligations under the contract;

21. That PCALIC has breached the Producer Agreement by, *inter alia*:

5

    a.    Failing to hold funds in trust for the benefit of CSI;

    b.    Failing to maintain the fiduciary funds as the property of CSI; and

    c.    Disposing of such funds without the written authorization of CSI;

22. That, as an actual, direct and proximate result of PCALIC's breach of contract, CSI has suffered damages, including, but not limited to, monetary damages through lost profits and lost income, plus interest and attorneys' fees;

### COUNT II—BREACH OF FIDUCIARY DUTY (against PCALIC)

23. That your plaintiff hereby incorporates by reference herein and realleges each and every one of the averments in the foregoing paragraphs, numbered "1" through "22", *seriatim*;

24. That the Producer Agreement, which is a valid contract binding CSI and PCALIC, requires CSI to hold all premiums, less allowable commissions, in trust for the benefit of CSI;

25. That PCALIC has negligently, recklessly, wantonly, or intentionally breached its fiduciary duty to CSI by, *inter alia*:

    a.    Failing to hold funds in trust for the benefit of CSI;

    b.    Failing to maintain the fiduciary funds as the property of CSI; and

    c.    Disposing of such funds without the written authorization of CSI;

26. That, as a direct and proximate result of PCALIC's breach of fiduciary duty, CSI has suffered damages, including, but not limited to, monetary damages through lost profits and lost income, plus interest and attorneys' fees;

### COUNT III—NEGLIGENCE/WANTONNESS (against PCALIC)

27. That your plaintiff hereby and herewith incorporates by reference herein and realleges, as if set out in full, each and every one of the discrete averments contained in the foregoing paragraphs, numbered "1" through "26", *seriatim*;

28. That PCALIC owed a duty to maintain CSI's funds and to conduct all work and operations in a reasonable manner.

29. PCALIC negligently, or with reckless and wanton indifference to the consequences, caused or otherwise induced PCH to terminate the Administrative Services Agreement; failed to hold funds in trust for the benefit of CSI; failed to maintain the fiduciary funds as the property of CSI; and disposed of such funds without the written authorization of CSI;

30. As a direct and proximate result of PCALIC's negligent and/or wanton conduct, CSI has suffered damages, including monetary damages through lost profits and lost income, plus interest and attorneys' fees.

### COUNT IV—TORTIOUS INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONS (against PCALIC)

31. That your plaintiff hereby and herewith incorporates by reference and realleges, as if set out in full, each and every one of the discrete averments contained in the foregoing paragraphs numbered "1"through "30", *seriatim*;

32. That the Administrative Services Agreement between CSI and PCH is a valid and binding contract;

33. That, upon information and belief, PCALIC knew and was aware of the Administrative Services Agreement between CSI and PCH;

34. That, upon information and belief, PCALIC intentionally, wrongfully, and unlawfully interfered with the Administrative Services Agreement;

35. That there is no justification or privilege that applies to PCALIC's interference; moreover, PCALIC is not a competitor of CSI;

36. That, as an actual, direct and proximate result of PCALIC's interference with the Administrative Services Agreement, PCH terminated the Administrative Services Agreement; consequently,

CSI suffered damages, including monetary damages through lost profits and lost income, plus interest and attorneys' fees;

37. That PCALIC is a third-party and stranger to the Administrative Services Agreement;

### COUNT V—CIVIL CONSPIRACY (AGAINST PCALIC, B.A. BARRICK & Barrick)

38. That your plaintiff hereby and herewith repeats and realleges, as if set out in full, each and every one of the averments contained in the foregoing enumerated paragraphs, numbered "1" through "37", seriatim;

39. That, upon information and belief, PCALIC agreed and conspired with B.A. BARRICK, and Barrick, in order to accomplish the termination of the Administrative Services Agreement, and in order to inflict other monetary damages and harm upon CSI;

40. That the purpose and intent of this conspiracy was to cause damage to CSI;

41. That, as a direct and proximate result of this conspiracy, PCH terminated the Administrative Services Agreement. Furthermore, CSI suffered damages, including monetary damages through lost profits and lost income, plus interest and attorneys' fees;

### COUNT VI—NEGLIGENCE/WANTONNESS (AGAINST Barrick)

42. That your plaintiff hereby and herewith repeats and realleges, as if set out in full, each and every one of the averments in the foregoing enumerated paragraphs, numbered "1" through "41", *seriatim*;

43. That Barrick, individually, owed a duty to maintain CSI's funds, as well as to conduct all work and operations *vis-à-vis* CSI in a diligent, loyal, prudent and reasonable manner;

44. That Barrick, either negligently, or else with reckless and wanton indifference to the consequences: (i.) caused PCH to terminate the Administrative Services Agreement; (ii.) failed to hold funds in trust for the benefit of CSI; (iii.) failed to maintain the subject fiduciary funds as the property of CSI; & (iv.) disposed of such funds without the written authorization of CSI;

8

45. That, as a direct and proximate result of Barrick's negligent and/or wanton conduct, CSI has suffered damages, including monetary damages through lost profits and lost income, plus interest and attorneys' fees;

### *COUNT VII—TORTIOUS INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONS (AGAINST BARRICK)*

46. That your plaintiff hereby and herewith repeats and realleges, as if set out in full, each and every one of the discrete averments contained in the foregoing enumerated paragraphs numbered "1" through "45", *seriatim*; .

47. That the Administrative Services Agreement between CSI and PCH is a valid contract;

48. That, upon information and belief, Barrick knew and was aware of the Administrative Services Agreement between CSI and PCH;

49. That Barrick intentionally, wrongfully, and unlawfully interfered with the Administrative Services Agreement;

50. That there is no justification or privilege that applies to Barrick's interference; additionally, Barrick is not a competitor of CSI;

51. That, as a direct and proximate result of Barrick's interference with the Administrative Services Agreement, PCH terminated the Administrative Services Agreement; furthermore, CSI suffered damages, including monetary damages, through lost profits and lost income, plus interest and attorneys' fees;

52. That Barrick is a third-party and stranger to the Administrative Services Agreement;

## *PRAYERS AND AD DAMNA*

WHEREFORE, and for the foregoing reasons, your plaintiff ever prays of this Honorable Court thusly:

(a.) That, in consideration of a finding of liability in respect of COUNT I, your plaintiff recover of PCALIC compensatory damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000);

(b.) That, in consideration of a finding of liability in respect of COUNT II, your plaintiff recover of PCALIC compensatory damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000);

(c.) That, in consideration of a finding of liability in respect of COUNT III, your plaintiff recover of PCALIC compensatory damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000);

(d.) That, in consideration of a finding of liability in respect of COUNT IV, your plaintiff recover of PCALIC compensatory damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000), and exemplary damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000);

(e.) That, in consideration of a finding of liability in respect of COUNT V, your plaintiff recover of PCALIC, B.A. BARRICK & Barrick, jointly and severally, compensatory damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000), and exemplary damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000);

(f.) That, in consideration of a finding of liability in respect of COUNT VI, your plaintiff recover of Barrick compensatory damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000);

(g.) That, in consideration of a finding of liability in respect of COUNT VII, your plaintiff recover of Barrick compensatory damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000), and exemplary damages in an amount to be determined by the trier of fact or else the sum of five million dollars ($5,000,000);

(h.) That, in order to prevent unjust enrichment this Honorable Court impress a constructive trust upon all sums held by your defendants that are traceable to either the Administrative Agreement or the Producer Agreement; &

(i.) That your plaintiff recover of all liable defendants herein all of his costs expended herein, inclusive of reasonable attorneys' fees; &

(j.) That your plaintiff would request such other and further relief as may be just and equitable under the existent circumstances.

Dated: 15 January 2010, at Alexandria, Virginia.

Respectfully submitted,

JOSEPH PETER DRENNAN
218 North Lee Street
Third Floor
Alexandria, Virginia 22314
Telephone: (703) 519-3773
Telecopier: (703) 548-4399
*E-mail*: joseph@josephpeterdrennan.com
District of Columbia Unified Bar No. 358196

ATTORNEY AND COUNSELLOR
FOR PLAINTIFF